# EXHIBIT A

**True and Certified Copy**

JSims  May 30, 2023



# Swett & Crawford

| | |
|---|---|
| **Policy No.** | JGD2700210 |
| **Renewal of:** | New |

# BY THIS
# POLICY OF INSURANCE
Through

## SWETT & CRAWFORD OF TEXAS, INC.

14643 DALLAS PKWY, LB#4
DALLAS, TEXAS 75254
PHONE: (214) 747-1200   FAX: (214) 672-2700

**INSURED'S NAME AND ADDRESS:**

Dole Enterprises, Inc.
12850 Allen Road
Bakersfield, CA  93313

**PRODUCING AGENT'S/BROKER'S NAME AND ADDRESS:**

Swett & Crawford
2330 Bidwell St. #204
Folsom, CA 95630

**NATURE OF INSURANCE:**   Commercial General Liability

**OPERATIONS OF THE INSURED:**   Operator/Non-Operator

**ORDER HEREON:**   100%

| PREMIUM (for order) | ▮▮▮ |
|---|---|
| Policy Fee | ▮▮▮ |
| Surplus Lines Tax | ▮▮▮ |
| Stamping Fee | ▮▮▮ |
| **TOTAL** | ▮▮▮ |

**EFFECTIVE FROM** 12:01 a.m. , 09/17/2011   **TO** 12:01 a.m. , 09/17/2012
At the Address of the Named Insured as stated above.

| **INSURER** | **AUTHORIZED SIGNATURE FOR INSURER** | **ISSUE DATE** |
|---|---|---|
| Gemini Insurance Company | By: B-baxley | September 22, 2011 |

12/10

GEM000001

NOTICE:

1. THE INSURANCE POLICY THAT YOU ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: www.insurance.ca.gov.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

SF 198230.2 73670 00741 D-1 (Effective January 1, 2009)

GEM000002

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call

toll-free telephone number for information or to make a complaint at:

### 1-877-972-2264

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

P. O. Box 149104

Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de

para informacion o para someter una queja al:

### 1-877-972-2264

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104

Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

EIL2352 03 10

GEM000003

# GEMINI INSURANCE COMPANY

## ENERGY COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Policy Number:** JGD2700210

**Renewal of:** New

1. **NAMED INSURED AND MAILING ADDRESS:**

   Dole Enterprise, Inc.
   12850 Allen Road
   Bakersfield, CA 93313

2. **INSURED'S OPERATIONS:**

   Operator/Non-Operator

3. **POLICY PERIOD:**

   From September 17, 2011 to September 17, 2012 both days at 12:01 A.M. Local Standard Time at the address of the Named Insured as shown above.

4. **FORMS AND ENDORSMENTS:**

   See Schedule of Forms and Endorsements

5. **LIMIT OF LIABILITY:**

   | | |
   |---|---|
   | Commercial General Liability | |
   | General Aggregate Limit | $2,000,000 |
   | Products-Completed Operations Aggregate Limit | $2,000,000 |
   | Each Occurrence Limit | $1,000,000 |
   | Personal And Advertising Injury Limit | $1,000,000 |
   | Damages to Premises Rented to You Limit | $   100,000 |
   | Medical Payments Limit | $       5,000 |

6. **DEDUCTIBLE:**

   Coverage      Bodily Injury, Property Damage, Pollution Clean Up Costs      $2,500 per occurrence

GEM000004

7.    **NOTICE OF A CLAIM:**

J. H. Blades & Co., Inc.
520 Post Oak Blvd., Suite 250
Houston, Texas 77027
Phone No. 713.780.8770

8.    **AUDIT PERIOD:**

None

9.    **PREMIUM:**

<u>Class Description</u>

Oil Lease Operator/Non-Operator



In full for exposures at inception  $

Total Premium at inception  $
Policy Fee  $

Total  $

.

DECLARATIONS
- 2 -

GEM000005

**Policy Number:**  JGD2700210

# Schedule of Forms and Endorsements

SCHEDULE

| | | |
|---|---|---|
| Texas Important Notice | EIL2352 | 03 10 |
| Schedule of Forms and Endorsements | EIL1002 | 03 10 |
| Named Insured | EIL1003 | 03 10 |
| Energy Commercial General Liability Policy | EGL1000 | 03 10 |
| Deductible Endorsement | EGL1009 | 03 10 |
| Waste Definition Endorsement | EGL1217 | 03 10 |
| Non-operating Working Interest Insurance Ranking Endorsement | EGL1289 | 03 10 |
| Earlier Notice of Cancellation Provided By Us | EGL 1900 | 03 10 |

No. of Days Notice - 30

Any person or organization required by written contract to receive notice as per list of such notices provided to Swett & Crawford at YOUR request.

| | | |
|---|---|---|
| Service of Suit | EIL2000 | 03 10 |
| Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States | EGL2162 | 03 10 |

GEM000006

GEM000007

**Policy Number:**   JGD2700210

# Named Insured

SCHEDULE

Dole Enterprise, Inc.
D & D Natural Resources, Inc.
D & B Pump
Gordon T. Dole
Trust of Gordon T. Dole

# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

## "Focusing On Your Energy Business"

## DEFINED TERMS

This policy contains certain words and phrases that have special meaning. These defined terms appear within this policy as **BOLDED AND CAPITALIZED**. As an example, **WE**, **US**, and **OUR**, refer to the company listed on the Declarations Page that insures **YOU**. **YOU** will find a list of these defined terms beginning on Page 25. For **YOUR** convenience, **WE** have provided an index of important topics beginning on Page 31.

## ABOUT THIS ENERGY COMMERCIAL GENERAL LIABILITY POLICY

This policy is specifically designed to insure companies in the oil and gas or energy business. This policy provides commercial general liability coverage to **YOU** and **YOUR** energy-related and other businesses. This policy describes who is covered by this policy, what is covered, and when and where there is coverage, as well as supplementary payments. As with any insurance policy, there are certain limitations and exclusions to the coverage. **YOU** also have certain obligations and requirements which **YOU** must comply with in order to maintain the benefits under this policy. Lastly, there are endorsements to the policy that change the terms, conditions, and exclusions in the policy.

**YOU must read the entire policy to understand the terms, conditions, coverages, limitations, and exclusions contained in this policy.**

© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000008

# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

"Focusing On Your Energy Business"

## TABLE OF CONTENTS

I.   NAMED INSUREDS AND INSUREDS ................................................................................................... 3
     A.   NAMED INSUREDS ....................................................................................................................... 3
     B.   INSUREDS ................................................................................................................................... 3
     C.   IN REM ACTION(S) ...................................................................................................................... 5

II.  COVERAGES AND DUTY TO DEFEND ............................................................................................. 5
     A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY ....................................................................... 5
     B.   POLLUTION CLEAN UP COSTS ..................................................................................................... 5
     C.   PERSONAL AND ADVERTISING INJURY LIABILITY ........................................................................... 6
     D.   MEDICAL PAYMENTS ................................................................................................................... 6
     E.   DUTY TO DEFEND ....................................................................................................................... 6

III. WHEN THERE IS COVERAGE ........................................................................................................... 7

IV.  COVERAGE TERRITORY .................................................................................................................... 7

V.   LIMITS OF INSURANCE ...................................................................................................................... 8

VI.  SUPPLEMENTARY PAYMENTS ......................................................................................................... 9

VII. EXCLUSIONS ..................................................................................................................................... 10
     A.   BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS, AND PERSONAL AND ADVERTISING
          INJURY EXCLUSIONS ................................................................................................................ 10
     B.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY EXCLUSIONS .................................................. 13
     C.   POLLUTION CLEAN UP COSTS EXCLUSIONS ............................................................................... 17
     D.   PERSONAL AND ADVERTISING INJURY LIABILITY EXCLUSIONS ...................................................... 18
     E.   MEDICAL PAYMENTS EXCLUSIONS ............................................................................................. 19

VIII. GENERAL CONDITIONS ................................................................................................................... 20

IX.  DEFINITIONS ..................................................................................................................................... 25

X.   INDEX ................................................................................................................................................ 31

*with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000009

# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

## I.  NAMED INSUREDS AND INSUREDS

### A.  Named Insureds

Each of the following is an **INSURED** if designated on the Declarations Page of this policy as a **NAMED INSURED** or satisfies the provisions in Section I.A.6. Newly Acquired or Formed Organizations:

1.  **Individual**:

     If **YOU** are an Individual – **YOU** and **YOUR** spouse are **INSUREDS**, but only with respect to the conduct of a business of which **YOU** are the sole owner.

2.  **Partnership or Joint Venture**:

     If **YOU** are a Partnership or Joint Venture – **YOU**, **YOUR MEMBERS**, **YOUR** partners, and their spouses are **INSUREDS**, but only with respect to the liability arising out of **YOUR** interest, or the conduct of **YOUR** business.

3.  **Limited Liability Company**:

     If **YOU** are a Limited Liability Company – **YOU** and **YOUR MEMBERS** are **INSUREDS**, but only with respect to the conduct of **YOUR** business.  **YOUR MANAGERS** are also **INSUREDS**, but only with respect to their duties as **YOUR MANAGERS**.

4.  **Other Organization**:

     If **YOU** are an organization other than a Partnership, Joint Venture, or Limited Liability Company – **YOU** are an **INSURED**, but only with respect to the conduct of **YOUR** business.

5.  **Trust**:

     If **YOU** are a Trust – **YOU** and **YOUR** trustees are **INSUREDS**, but only with respect to their duties as trustees to **YOU**.

6.  **Newly Acquired or Formed Organizations**:

     Any Newly Acquired or Formed Organization (other than a Partnership or Joint Venture) over which **YOU** maintain ownership or majority interest will qualify as a **NAMED INSURED** if there is no other similar insurance available to that organization. However:

     a.  Coverage under this provision is afforded only until the 120th day after **YOU** acquire or form the organization or the end of the policy period, whichever is earlier; and

     b.  Section II.A. Bodily Injury and Property Damage Liability and Section II.B. Pollution Clean Up Costs do not apply to **BODILY INJURY** or **PROPERTY DAMAGE** costs that occurred, or **POLLUTION CLEAN UP COSTS** that commenced, before **YOU** acquired or formed the organization.  Section II.C. Personal and Advertising Injury Liability does not apply to **PERSONAL AND ADVERTISING INJURY** arising out of an offense committed before **YOU** acquired or formed the organization.

If **YOU** own a **NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property, then **YOU** are a **NAMED INSURED**, but only with respect to liability arising out of **YOUR NON-OPERATING WORKING INTEREST** in such oil, gas, or other mineral property.

No person or organization is an **INSURED** with respect to the conduct of any current or past Partnership or Joint Venture, or Limited Liability Company that is not shown as a **NAMED INSURED** on the Declarations Page.

### B.  Insureds

Each of the following is an **INSURED** with respect to the coverages set forth in Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, and Section II.D. Medical Payments of this policy:

GEM000010

1. <u>Additional Insured</u>:

Any person or organization with whom **YOU** agree in writing in a contract or agreement, to add as an Additional Insured on **YOUR** policy or to provide liability insurance for, but only with respect to liability arising out of **YOUR** operations, or liability arising out of premises owned by or rented to **YOU**.

In addition, the written contract or written agreement requiring **YOU** to include a person or organization as an Additional Insured must be in effect during the policy period and executed before the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred.  Furthermore, the insurance provided will not exceed the lesser of:

a. The coverage and/or limits of this policy; or

b. The coverage and/or limits required by said contract or agreement.

2. <u>Employees and Volunteer Workers</u>:

**YOUR EMPLOYEES**, but only for acts within the scope of their employment by **YOU** or while performing duties related to the conduct of **YOUR** business; and **VOLUNTEER WORKERS**, but only while acting at **YOUR** direction and performing duties related to the conduct of **YOUR** business.

However, neither **YOUR EMPLOYEES** nor **VOLUNTEER WORKERS** are **INSUREDS** for:

a. **BODILY INJURY** or **PERSONAL AND ADVERTISING INJURY**:

(1) To **YOU**, to **YOUR** partners or **MEMBERS** (if **YOU** are a Partnership or Joint Venture), to **YOUR MEMBERS** (if **YOU** are a Limited Liability Company), to another **EMPLOYEE** while in the course of his or her employment or performing duties related to the conduct of **YOUR** business, or to other **VOLUNTEER WORKERS** while performing duties related to the conduct of **YOUR** business;

(2) To the spouse, child, parent, or sibling of that co-**EMPLOYEE** or **VOLUNTEER WORKER** as a consequence of Subparagraph a.(1) above;

(3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Subparagraphs a.(1) or (2) above; or

(4) Arising out of his or her providing or failing to provide professional health care services.

With respect to **BODILY INJURY** only, the limitation in Subparagraph a. above does not apply to:

(1) **YOU** or **YOUR** directors, **MANAGERS**, **MEMBERS**, **EXECUTIVE OFFICERS**, partners, or supervisors as **INSUREDS**; or

(2) **YOUR EMPLOYEES**, as **INSUREDS**, with respect to such damages because of first aid services administered by such an **EMPLOYEE**.

b. **PROPERTY DAMAGE** to property:

(1) Owned, occupied, or used by; or

(2) Rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by;

**YOU**, any of **YOUR EMPLOYEES**, **VOLUNTEER WORKERS**, any partner or **MEMBER** (if **YOU** are a Partnership or Joint Venture), or any of **YOUR MEMBERS** (if **YOU** are a Limited Liability Company).

3. <u>Executive Officers and Directors</u>:

**EXECUTIVE OFFICERS** and Directors to the extent that **YOU** have **EXECUTIVE OFFICERS** and Directors, but only with respect to their duties as **YOUR EXECUTIVE OFFICERS** or directors.

4. <u>Legal Representative</u>:

**YOUR LEGAL REPRESENTATIVE** if **YOU** die, but only with respect to duties as **YOUR LEGAL REPRESENTATIVE**.  The **LEGAL REPRESENTATIVE** will have all **YOUR** rights and duties under this policy.

5. <u>Non-operating Working Interest Owner</u>:

A person or organization owning a **NON-OPERATING WORKING INTEREST**, but only when **YOU** have agreed in writing in a contract or agreement (including, but not limited to, a Joint Operating Agreement) to provide insurance coverage for the

---

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000011

benefit of the person or organization owning a **NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property in which **YOU** are the **OPERATOR**. In addition, the written contract or agreement requiring **YOU** to include a **NON-OPERATING WORKING INTEREST** must be in effect during the policy period and executed before the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred. However, the person or organization owning a **NON-OPERATING WORKING INTEREST** is an **INSURED**, only with respect to liability arising out of the **NON-OPERATING WORKING INTEREST**. Furthermore, the insurance provided will not exceed the lesser of:

    **a.** The coverage and/or limits of this policy; or

    **b.** The coverage and/or limits required by said contract or agreement.

**6.** <u>Permissive User of Mobile Equipment</u>:

With respect to **MOBILE EQUIPMENT** registered in **YOUR** name under a motor vehicle registration law:

    **a.** Persons driving such equipment on a public road with **YOUR** permission; and

    **b.** Persons or organizations responsible for the conduct of such persons described in Subparagraph a. above, but only with respect to the operation of the equipment and only if no other insurance of any kind is available to them.

However, no person or organization is an **INSURED** with respect to **BODILY INJURY** to any co-**EMPLOYEE** of the person driving the equipment, or **PROPERTY DAMAGE** to any property owned or occupied by or loaned or rented to **YOU** or in **YOUR** charge, or the charge of the employer of any person who is an **INSURED** under this provision.

**7.** <u>Real Estate Manager</u>:

Any person (other than **YOUR EMPLOYEE** or **VOLUNTEER WORKER**) or organization while acting as **YOUR** Real Estate Manager, but only with respect to their duties as **YOUR** Real Estate Manager. However, Real Estate Manager does not include any person or organization providing services to **YOU** with regard to **YOUR** oil and gas leases including, without limitation, the person commonly referred to as a landman.

**8.** <u>Stockholders</u>:

To the extent that **YOU** have Stockholders, they and their spouses, but only with respect to their liability as Stockholders.

**9.** <u>Temporary Custodian</u>:

Any person or organization having proper temporary custody of **YOUR** property if **YOU** die, but only:

    **a.** With respect to liability arising out of the maintenance or use of that property; and

    **b.** Until **YOUR LEGAL REPRESENTATIVE** has been appointed.

**C.** In Rem Action(s)

In Rem Action(s) against any watercraft owned or operated by, rented by, chartered by, or loaned to the **INSURED** will in all respects be treated in the same manner as though the action were In Personam against that **INSURED**.

## II. COVERAGES AND DUTY TO DEFEND

**A.** Bodily Injury and Property Damage Liability

**WE** will pay the amounts that an **INSURED** becomes legally obligated to pay as damages because of **BODILY INJURY** or **PROPERTY DAMAGE** caused by an **OCCURRENCE** for which this policy applies.

**B.** Pollution Clean Up Costs

**WE** will pay the amounts that **YOU** voluntarily incur or become legally obligated to pay as **POLLUTION CLEAN UP COSTS** because of a **POLLUTION INCIDENT** which has commenced at or from **YOUR OIL OR GAS SITE** or **YOUR WORK** at an **OIL OR GAS SITE**, provided the following **ELIGIBLE POLLUTION INCIDENT** requirements are met:

**1.** The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;

**2.** The **POLLUTION INCIDENT** commenced abruptly and instantaneously and can be identified as having first commenced during the policy period;

GEM000012

3. The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and

4. The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

However, if **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

C. **Personal and Advertising Injury Liability**

**WE** will pay the amounts that an **INSURED** becomes legally obligated to pay as damages because of a **PERSONAL AND ADVERTISING INJURY** caused by an offense for which this policy applies.

D. **Medical Payments**

1. **WE** will pay medical expenses for **BODILY INJURY** caused by an **OCCURRENCE**:

   a. On premises **YOU** own or rent;

   b. On ways next to premises **YOU** own or rent; or

   c. Because of **YOUR** operations;

   provided that:

   (1) The **OCCURRENCE** takes place in the Coverage Territory and during the policy period;

   (2) The expenses are incurred and reported to **US** within one year of the date of the **OCCURRENCE**; and

   (3) The injured person submits to examination, at **OUR** expense, by physicians of **OUR** choice as often as **WE** reasonably require.

2. **WE** will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. **WE** will pay reasonable expenses for:

   a. First aid administered at the time of an **OCCURRENCE**;

   b. Necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and

   c. Necessary ambulance, hospital, professional nursing, and funeral services.

E. **Duty to Defend**

**WE** will have the right and Duty to Defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT,** to which this policy applies. However, **WE** will have no Duty to Defend the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS,** to which this policy does not apply.

**WE** may at **OUR** discretion, investigate any **OCCURRENCE**, **POLLUTION INCIDENT**, or offense and settle any **CLAIM** or **SUIT** that may result. But:

1. The amount **WE** will pay for damages or **POLLUTION CLEAN UP COSTS** is limited as described in Section V. Limits Of Insurance; and

2. **OUR** right and Duty to Defend ends when **WE** have used up the applicable limit of insurance in the payment of judgments or settlements under Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, or medical expenses under Section II.D. Medical Payments or **POLLUTION CLEAN UP COSTS** paid under Section II.B. Pollution Clean Up Costs.

**Other than as provided pursuant to Section VI. Supplementary Payments, WE have no other obligation or liability to pay sums or perform any acts or services.**

## III. WHEN THERE IS COVERAGE

A.   This policy applies to Bodily Injury and Property Damage Liability, Pollution Clean Up Costs, and Personal and Advertising Injury Liability only if:

1.   The **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** is caused by an **OCCURRENCE** or offense, or the **POLLUTION CLEAN UP COSTS** are caused by an **ELIGIBLE POLLUTION INCIDENT** that takes place in the Coverage Territory described in Section IV. Coverage Territory;

2.   The **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurs during the policy period;

3.   The **POLLUTION INCIDENT** commences during the policy period;

4.   Prior to the policy period, no **INSURED** and no **EMPLOYEE**, authorized by **YOU** to give or receive notice of an **OCCURRENCE**, offense, or **CLAIM**, knew that the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** had occurred, in whole or in part.  If such an **INSURED** or authorized **EMPLOYEE** knew, prior to the policy period, that the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred, then any continuation, change, or resumption of such **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** during or after the policy period, will be deemed to have been known prior to the policy period; and

5.   Prior to the policy period, no **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** knew that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** had commenced, in whole or in part.  If any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** knew, prior to the policy period, that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** commenced, then any continuation, change, or resumption of **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** during or after the policy period will be deemed to have been known prior to the policy period.

B.   **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** which occurs during the policy period, and prior to the policy period, was not known to have occurred by any **NAMED INSURED** or any **EMPLOYEE** authorized by **YOU** to give or receive notice of an **OCCURRENCE**, offense, or **CLAIM**, includes any continuation, change, or resumption of that **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** after the end of the policy period.

C.   **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** will be deemed to have been known to have occurred at the earliest time when any **NAMED INSURED** or any **EMPLOYEE** who is authorized by **YOU** to give or receive notice of an **OCCURRENCE** or **CLAIM**:

1.   Reports all, or any part, of the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** or any insurer;

2.   Receives a written or verbal demand or **CLAIM** for damages because of the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY**; or

3.   Becomes aware by any other means that **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** has occurred or has begun to occur.

Subsection C. above does not apply to **BODILY INJURY** and **PROPERTY DAMAGE** resulting from an **ELIGIBLE POLLUTION INCIDENT**.

D.   Damages because of **BODILY INJURY** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **BODILY INJURY**.

## IV. COVERAGE TERRITORY

This policy applies to **CLAIMS** or **SUITS**, arising from **OCCURRENCES** or offenses, in the United States of America (including its territories and possessions), United States Federal Lease Blocks managed by the Minerals Management Services (including state waters), Puerto Rico, and Canada.  It also applies to International waters and airspace, as long as the injury or damage occurs in the course of travel or transportation between the United States of America (including its territories and possessions), United States Federal Lease Blocks managed by the Minerals Management Services (including state waters), Puerto Rico, and Canada. Coverage also applies to other parts of the world for injury or damages arising out of:

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000014

A.  Goods or products made or sold by **YOU**;

B.  Activities of a person whose home is in the United States of America (including its territories and possessions), Puerto Rico, and Canada, but is away for a short time period on **YOUR** business; or

C.  **PERSONAL AND ADVERTISING INJURY** offenses that take place through the Internet or other similar electronic means of communication;

as long as an **INSURED**'s liability to pay damages is determined in a **SUIT** on the merits in the United States of America (including its territories and possessions), Puerto Rico, or Canada.

## V.  LIMITS OF INSURANCE

A.  The Limits Of Insurance shown on the Declarations Page and the terms below fix the most **WE** will pay regardless of the number of:

1.  **INSUREDS**;

2.  **CLAIMS** made or **SUITS** brought; or

3.  Persons or organizations making **CLAIMS** or bringing **SUITS**.

B.  The General Aggregate Limit is the most **WE** will pay for the sum of:

1.  Medical expenses under Section II.D. Medical Payments;

2.  Damages under Section II.A. Bodily Injury and Property Damage Liability, except damages because of **BODILY INJURY** or **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**;

3.  **POLLUTION CLEAN UP COSTS** under Section II. B. Pollution Clean Up Costs; and

4.  Damages under Section II.C. Personal and Advertising Injury Liability.

C.  The Products-Completed Operations Aggregate Limit is the most **WE** will pay under Section II.A. Bodily Injury and Property Damage Liability for damages because of **BODILY INJURY** and **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

D.  Subject to Subsection B. above, the Personal and Advertising Injury Limit is the most **WE** will pay under Section II.C. Personal and Advertising Injury Liability for the sum of all damages because of all **PERSONAL AND ADVERTISING INJURY** sustained by any one person or organization.

E.  Subject to Subsection B. or C. above, whichever applies, the Each Occurrence Limit is the most **WE** will pay for the sum of:

1.  Damages under Section II.A. Bodily Injury and Property Damage Liability;

2.  **POLLUTION CLEAN UP COSTS** under Section II.B. Pollution Clean Up Costs; and

3.  Medical expenses under Section II.D. Medical Payments;

because of all **BODILY INJURY**, **PROPERTY DAMAGE**, and **POLLUTION CLEAN UP COSTS** arising out of any one **OCCURRENCE** or **POLLUTION INCIDENT**. The Each Occurrence Limit will apply to all **BODILY INJURY**, **PROPERTY DAMAGE**, and **POLLUTION CLEAN UP COSTS** arising out of any one **NAMED STORM**.

F.  Subject to Subsection E. above, the Damage To Premises Rented To You Limit is the most **WE** will pay under Section II. A. Bodily Injury and Property Damage Liability for damages because of **PROPERTY DAMAGE** to any one premises, while rented to **YOU**, or in the case of damage by fire, while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner.

G.  Subject to Subsection E. above, the Medical Payments Limit is the most **WE** will pay under Section II.D. Medical Payments for all medical expenses because of **BODILY INJURY** sustained by any one person.

**The Limits Of Insurance of this policy apply to the policy period shown on the Declarations Page. If the existing policy period is extended after issuance for an additional period that is less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.**

GEM000015

## VI. SUPPLEMENTARY PAYMENTS

A.  **WE** will pay, with respect to any **CLAIM WE** investigate or settle, or any **SUIT** against an **INSURED WE** defend:

1.  **Bail Bonds**:

    Up to $2,000 for the cost of Bail Bonds.  **WE** do not have to furnish these Bail Bonds.

2.  **Bonds to Release Attachments**:

    The cost of Bonds to Release Attachments, but only for bond amounts within the applicable limit of insurance.  **WE** do not have to furnish these bonds.

3.  **Control of Well Expenses**:

    Up to $50,000 for **CONTROL OF WELL EXPENSES** related to **CONTROL OF WELL ACTIVITIES** required to be undertaken by or on behalf of the **NAMED INSURED** because of a **CONTROL OF WELL INCIDENT** arising from a **PRODUCING WELL** on dry land.

4.  **Court Costs**:

    All Court Costs taxed against the **INSURED** in the **SUIT**.  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

5.  **Expenses**:

    All Expenses **WE** incur.  Expenses, pursuant to Paragraph 5., include media expenses that **WE** incur in an amount not to exceed $10,000 if **WE** choose at **OUR** option to incur media expenses.

6.  **Investigation and Defense Expenses Incurred by You at Our Request**:

    All reasonable expenses incurred by the **INSURED** at **OUR** request to assist **US** in the investigation or defense of the **CLAIM** or **SUIT**, including actual loss of earnings up to $1,000 a day because of time off from work.

7.  **Prejudgment Interest**:

    Prejudgment Interest awarded against the **INSURED** on that part of the judgment **WE** pay.  If **WE** make an offer to pay the applicable limit of insurance, **WE** will not pay any Prejudgment Interest based on that period of time after the offer.

8.  **Post Judgment Interest**:

    All interest on the full amount of any judgment that accrues after entry of the judgment and before **WE** have paid, offered to pay, or deposited in court, the part of the judgment that is within the applicable limit of insurance.

B.  **Indemnitee Defense Expenses**

If an **INDEMNITEE** of the **INSURED** is named as a party to a **SUIT**, **WE** will defend that **INDEMNITEE** if all of the following conditions have been met:

1.  The **SUIT** against the **INDEMNITEE** seeks damages for which the **INSURED** has assumed the liability of the **INDEMNITEE** in a written contract or agreement that is an **INSURED CONTRACT**;

2.  This policy applies to such liability assumed by the **INSURED**;

3.  The obligation to defend, or the cost of the defense of, that **INDEMNITEE**, has also been assumed by the **INSURED** in the same **INSURED CONTRACT**;

4.  The **INDEMNITEE** agrees to cooperate with **US** and allows **US** to conduct and control the defense of the **INDEMNITEE** including, but not limited to, appointing counsel;

5.  The **INDEMNITEE** agrees to and does immediately send **US** copies of any demands, notices, summonses, or legal papers received in connection with the **SUIT**; and

6.  The **INDEMNITEE** provides **US** with written authorization to obtain records and other information related to the **SUIT**.

If conditions 1., 2., and 3. are met, but the **INDEMNITEE** fails to comply with conditions 4., 5.,or 6., then **WE** will still defend the **INDEMNITEE** but the attorneys fees and litigation expenses that **WE** incur will be deemed to be damages because of **BODILY INJURY** or **PROPERTY DAMAGE** and will reduce the applicable limit of insurance.

**OUR** obligation to make any Supplementary Payments, as respects Subsections A. and B. above, ends when **WE** have used up the applicable limit of insurance through payments of judgments, settlements, or **POLLUTION CLEAN UP COSTS**. Supplementary Payments will not reduce the applicable limit of insurance. Supplementary Payments do not include any fine or other penalty.

## VII. EXCLUSIONS

A. Bodily Injury, Property Damage, Pollution Clean Up Costs, and Personal and Advertising Injury Exclusions

The following Exclusions apply to Section II.A. Bocily Injury and Property Damage Liability, B. Pollution Clean Up Costs, and C. Personal and Advertising Injury Liability;

This policy does not apply to:

1. Acid Rain:

   a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, suspected presence, physical exposure, or threat of exposure to **ACID RAIN**.

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, mitigate, or in any way respond to, or assess the effects of **ACID RAIN**; or repair, replace, or improve any property as a result of such effects; or

      (2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ACID RAIN**; or repairing, replacing, or improving any property as a result of such effects.

2. Asbestos, Lead, Radioactive Material, or Silica and Silica-Related Dust:

   a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, or suspected:

      (1) Ingestion of, inhalation of, absorption of, presence of, physical exposure to, threatened exposure to, contact with, threatened contact with, or existence of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** in any form, including, but not limited to, goods or products containing any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**;

      (2) Use of any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** in constructing or manufacturing any good, product, or structure;

      (3) Removal of any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** from any good, product, or structure; or

      (4) The manufacture, intellectual development, sale, transportation, storage, or disposal of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**, or goods or products containing any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**.

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate, or in any way respond to, or assess the effects of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**; or repair, replace, or improve any property as a result of such effects; or

GEM000017

(2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**; or repairing, replacing, or improving any property as a result of such effects.

This Exclusion does not apply to **RADIOACTIVE MATERIAL** while used in well logging or measuring tools.

3. <u>Control Of Well Expenses</u>:

**CONTROL OF WELL EXPENSES** arising out of a **CONTROL OF WELL INCIDENT**.

This Exclusion does not apply to:

a. Damages caused by **YOUR WORK** resulting in a **CONTROL OF WELL INCIDENT**, unless **YOU** are the **OPERATOR** or own a **NON-OPERATING WORKING INTEREST** in the well, or **YOU** have assumed liability for a **CONTROL OF WELL INCIDENT** by contract or agreement for the well, including, but not limited to, a turnkey work agreement, or **YOU** or someone on **YOUR** behalf was obligated to obtain Control Of Well or other similar insurance, regardless of whether such insurance is in force or the limits of liability are available; or

b. **CONTROL OF WELL EXPENSES** expressly provided for in Section VI.A.3. Control Of Well Expenses.

4. <u>Employment-Related Practices</u>:

a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, **PERSONAL AND ADVERTISING INJURY**, or any other damages sustained at any time by any person, whether or not sustained in the course of employment by an **INSURED**, arising directly or indirectly out of any employment-related act, omission, policy, practice, or representation directed at such person, occurring in whole or in part at any time, including any:

(1) Arrest, detention, or imprisonment;

(2) Breach of any express or implied covenant;

(3) Coercion, criticism, humiliation, prosecution, or retaliation;

(4) Defamation or disparagement;

(5) Demotion, discipline, evaluation, or reassignment;

(6) Discrimination, harassment, or segregation;

(7) Eviction, invasion, or other violation of any right of occupancy;

(8) Failure or refusal to advance, compensate, employ, or promote;

(9) Invasion or other violation of any right of privacy or publicity;

(10) Termination of employment; or

(11) Other employment-related act, omission, policy, practice, representation, or relationship in connection with any **INSURED** at any time.

b. Any damages sustained by the spouse, child, parent, or sibling of such a person as a consequence of damages to that person at whom any Employment-Related Practice as described in Subparagraph a. is directed.

This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

5. <u>Enhancement, Maintenance, or Capital Expenditures</u>:

Any loss, cost, or expense incurred by **YOU** or others after an **OCCURRENCE** or **POLLUTION INCIDENT**, for any:

a. Enhancement or maintenance of any property; or

b. Expenditure or improvement that would qualify as a **CAPITAL EXPENDITURE**.

GEM000018

6. <u>Fines or Penalties</u>:

Any criminal, civil, or administrative fine or penalty.  This Exclusion does not apply to punitive or exemplary damages, if insuring such damages is not illegal or against public policy under the law of the jurisdiction pursuant to which this policy is construed.

7. <u>Fungi or Bacteria</u>:

a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **FUNGI** or Bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

(1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, mitigate, or in any way respond to or assess the effects of **FUNGI** or Bacteria; or repair, replace, or improve any property as a result of such effects; or

(2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **FUNGI** or Bacteria; or repairing, replacing, or improving any property as a result of such effects.

8. <u>Government Identified Contaminated Site</u>:

**BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of any **GOVERNMENT IDENTIFIED CONTAMINATED SITE**.

9. <u>Nuclear Energy</u>:

a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY**:

(1) With respect to which an **INSURED** under this policy also has status as an **INSURED** under a Nuclear Energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would have had status as an **INSURED** under any such policy but for its termination upon exhaustion of its limits of insurance; or

(2) Arising out of the **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which:

(i) Any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amending that Act; or

(ii) Any **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency of the United States of America with any person or organization.

b. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**:

(1) If the **NUCLEAR MATERIAL**:

(i) Is at any **NUCLEAR FACILITY** owned by, or operated by, or on behalf of, any **INSURED**;

(ii) Has been discharged or dispersed from that **NUCLEAR FACILITY**;

(iii) Is contained in **NUCLEAR SPENT FUEL** or **NUCLEAR WASTE** at any time transported, handled, stored, disposed of, processed, treated, possessed, or used by or on behalf of any **INSURED**; or

(2) In any way related to the furnishing by an **INSURED** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **NUCLEAR FACILITY**.  But if such facility is located within the United States of America (including its possessions or territories) or Canada, this Subparagraph (2), applies only to **NUCLEAR PROPERTY DAMAGE** to such **NUCLEAR FACILITY** and any property there at.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000019

10. <u>Recall of Products, Work, or Impaired Property</u>:

Any loss, cost, or expense incurred by **YOU** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

a.   **YOUR PRODUCT**;

b.   **YOUR WORK**; or

c.   **IMPAIRED PROPERTY**;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

11. <u>Recording and Distribution of Material or Information in Violation of Law</u>:

**BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.   The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

b.   The CAN-SPAM Act of 2003 including any amendment of or addition to such law;

c.   The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transaction Act (FACTA); or

d.   Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

12. <u>War</u>:

**BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY**, however caused, arising out of **WAR**.

13. <u>Workers' Compensation or Similar Laws</u>:

Any obligation of the **INSURED** under any state or federal Workers' Compensation, disability benefits, or unemployment compensation law or any similar law.

Exclusions in Paragraphs 10. and 12. above, do not apply to damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner. A separate limit of insurance applies to this coverage as described in Section V. Limits Of Insurance.

B.   **Bodily Injury and Property Damage Liability Exclusions**

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.A. Bodily Injury and Property Damage Liability;

This policy does not apply to:

1. <u>Aircraft, Auto, or Watercraft</u>:

**BODILY INJURY** or **PROPERTY DAMAGE** arising out of the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft owned or operated by, rented by, chartered by, or loaned to any **INSURED**.  Use includes operation and **LOADING OR UNLOADING**.

This Exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **INSURED**, if the **OCCURRENCE** which caused the **BODILY INJURY** or **PROPERTY DAMAGE** involved the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft that is owned or operated by, rented by, chartered by, or loaned to any **INSURED**.

This Exclusion does not apply to:

a.   A watercraft while ashore on premises **YOU** own or rent;

b.   A watercraft **YOU** do not own that is:

---

*Includes copyrighted material of Insurance Services Office, Inc.,*<br>*with its permission*<br>© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000020

**(1)** Less than 100 feet long; and

**(2)** Not being used by **YOU** to carry persons or property for a charge;

**c.** Parking an **AUTO** on, or on the ways next to, premises **YOU** own or rent, provided the **AUTO** is not owned by or rented or loaned to **YOU** or any **INSURED**;

**d.** Liability assumed under any **INSURED CONTRACT** for the ownership, maintenance, or use of aircraft or watercraft. However, this Exclusion will apply to **BODILY INJURY**, **PROPERTY DAMAGE**, or any other loss, cost, or expense that may be recoverable under the **INSURED**'s or **OPERATOR**'s Hull, Protection & Indemnity coverage, including **CLAIMS** for contractual liability; Marine Operators/Charterer's Liability coverage, or any similar marine insurance coverages on owned, operated, chartered, or brokered watercraft; or

**e.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

**(1)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **MOBILE EQUIPMENT** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(2)** The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of **MOBILE EQUIPMENT**.

**2.** <u>Contractual Liability</u>:

**BODILY INJURY** or **PROPERTY DAMAGE** for which the **INSURED** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This Exclusion does not apply to liability for damages:

**a.** That the **INSURED** would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an **INSURED CONTRACT**, provided the **BODILY INJURY** or **PROPERTY DAMAGE** occurs after the execution of the contract or agreement.

**3.** <u>Damage to Impaired Property or Property Not Physically Injured</u>:

**PROPERTY DAMAGE** to **IMPAIRED PROPERTY** or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy, or dangerous condition in **YOUR PRODUCT** or **YOUR WORK**; or

**b.** A delay or failure by **YOU** or anyone acting on **YOUR** behalf to perform a contract or agreement in accordance with its terms.

This Exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **YOUR PRODUCT** or **YOUR WORK** after it has been put to its intended use.

**4.** <u>Damage to Property</u>:

**PROPERTY DAMAGE** to:

**a.** Property **YOU** own, rent, or occupy including any loss, costs, or expenses incurred by **YOU** or any other person or organization, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**b.** Premises **YOU** sell, give away, or abandon, if the **PROPERTY DAMAGE** arises out of any part of those premises;

**c.** Property loaned to **YOU**;

**d.** Personal property in the care, custody, or control of the **INSURED**. This Exclusion does not apply to **UNDERGROUND OILFIELD EQUIPMENT** of others if **YOU** are an **OILFIELD SERVICES CONTRACTOR**;

**e.** That particular part of real property on which **YOU** or any contractors or subcontractors working directly or indirectly on **YOUR** behalf are performing operations, if the **PROPERTY DAMAGE** arises out of those operations. This Exclusion does not apply to **PROPERTY DAMAGE** to **UNDERGROUND RESOURCES** or the **WELL BORE**, for which **YOU** have no ownership interest; however, this Exclusion will apply to **PROPERTY DAMAGE** to that specific part of the **WELL BORE** on which **YOU** are actually working; or

GEM000021

    f.    That particular part of any property that must be restored, repaired, or replaced because **YOUR WORK** was incorrectly performed on it.

Subparagraphs a. and c. of this Exclusion do not apply to **PROPERTY DAMAGE** (other than damage by fire) to premises, including the contents of such premises, rented to **YOU** for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section V. Limits Of Insurance.

Subparagraph b. of this Exclusion does not apply if the premises are **YOUR WORK** and were never occupied, rented, or held for rental by **YOU**.

Subparagraphs c., d., e., and f. of this Exclusion do not apply to liability assumed under a sidetrack agreement.

Subparagraph f. of this Exclusion does not apply to **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

5.   <u>Damage to Your Product</u>:

Any **PROPERTY DAMAGE** to **YOUR PRODUCT** arising out of it or any part of it.

6.   <u>Damage to Your Work</u>:

Any **PROPERTY DAMAGE** to **YOUR WORK** arising out of it or any part of it and included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **YOUR** behalf by a subcontractor.

7.   <u>Electronic Data</u>:

**BODILY INJURY**, **PROPERTY DAMAGE** or any loss, cost, or expense arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **ELECTRONIC DATA**.

8.   <u>Employer's Liability</u>:

**BODILY INJURY** to:

    a.    An **EMPLOYEE** of the **INSURED** arising out of and in the course of:

        (1)   Employment by the **INSURED**; or

        (2)   Performing duties related to the conduct of the **INSURED**'s business; or

    b.    The spouse, child, parent, or sibling of that **EMPLOYEE** as a consequence of Subparagraph a. above.

This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This Exclusion does not apply to liability assumed by the **INSURED** under an **INSURED CONTRACT**.

9.   <u>Expected or Intended Injury</u>:

**BODILY INJURY** or **PROPERTY DAMAGE** expected or intended from the standpoint of the **INSURED**.

This Exclusion does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** resulting from the use of reasonable force to protect persons or tangible property.

10.  <u>Liquor Liability</u>:

**BODILY INJURY** or **PROPERTY DAMAGE** for which any **INSURED** may be held liable by reason of:

    a.    Causing or contributing to the intoxication of any person;

    b.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c.    Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This Exclusion applies only if **YOU** are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

GEM000022

11. **Mobile Equipment**:

Any **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

a. The transportation of **MOBILE EQUIPMENT** by an **AUTO** owned or operated by or rented or loaned to any **INSURED**; or

b. The use of **MOBILE EQUIPMENT** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunt activity.

12. **Personal and Advertising Injury**:

**BODILY INJURY** arising out of **PERSONAL AND ADVERTISING INJURY**.

13. **Pollution**:

a. **BODILY INJURY** or **PROPERTY DAMAGE** arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**:

(1) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**. However, this Subparagraph (1) does not apply to:

(i) **BODILY INJURY** if sustained within a building and because of smoke, fumes, vapor, or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) **BODILY INJURY** or **PROPERTY DAMAGE** for which **YOU** may be held liable, if **YOU** are a contractor and the owner or lessee of such premises, site, or location has been added to **YOUR** policy as an Additional Insured with respect to **YOUR** ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any **INSURED**, other than that Additional Insured;

(iii) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

(iv) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**;

(2) At or from any premises, site, or location which is or was at any time used by or for any **INSURED** or others for the handling, storage, disposal, processing, or treatment of **WASTE**;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as **WASTE** by or for:

(i) Any **INSURED**; or

(ii) Any person or organization for whom **YOU** may be legally responsible;

(4) At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED**'s behalf are performing operations if the **POLLUTANTS** are brought on or to the premises, site, or location in connection with such operations by such **INSURED**, contractor, or subcontractor. However, this Subparagraph (4) does not apply to:

(i) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of **MOBILE EQUIPMENT** or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them.

This exception, does not apply if the **BODILY INJURY** or **PROPERTY DAMAGE** arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such **INSURED**, contractor, or subcontractor;

(ii) **BODILY INJURY** or **PROPERTY DAMAGE** sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by **YOU** or on **YOUR** behalf by a contractor or subcontractor;

---

 *Includes copyrighted material of Insurance Services Office, Inc.,
with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000023

(iii)  **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

(iv)  **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**;

(5)  At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED**'s behalf are performing operations if the operations are to identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate, or in any way respond to or assess the effects of **POLLUTANTS**; or

(6)  At or from any **UNDERGROUND STORAGE TANK**.

b.  Any loss, cost, or expense arising out of any:

(1)  Request, demand, order, or statutory or regulatory requirement that any **INSURED** or others to identify, abate, test for, sample, monitor, clean up, remove, cover contain, treat, detoxify, decontaminate, neutralize, mitigate, or in any way respond to or assess the effects of **POLLUTANTS**; or

(2)  **CLAIM**, **SUIT**, or proceeding by or on behalf of a governmental authority for damages because of identification of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **POLLUTANTS**.

However, this Subparagraph (b) does not apply to liability for damages because of **PROPERTY DAMAGE** that the **INSURED** would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such **CLAIM** or **SUIT** by or on behalf of a governmental authority.

Exclusions in Paragraphs 1., 3., thru 6., 8., 10., 11., and 13. above do not apply to damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section V. Limits Of Insurance as shown on the Declarations Page.

C.  Pollution Clean Up Costs Exclusions

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II. B. Pollution Clean Up Costs;

This policy does not apply to:

1.  <u>Aircraft, Auto, or Watercraft</u>:

**POLLUTION CLEAN UP COSTS** arising out of the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft owned or operated by, rented by, chartered by, or loaned to any **INSURED**.  As respects this Exclusion, use includes operation and **LOADING OR UNLOADING**.

2.  <u>Failure to Comply with Laws</u>:

**POLLUTION CLEAN UP COSTS** arising out of or resulting from any failure to comply with any law, statute, regulation, ordinance, governmental directive, or order; provided that such failure is a willful or deliberate act or omission by or on behalf of the **INSURED**.

3.  <u>Waste</u>:

**POLLUTION CLEAN UP COSTS** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS** which are or were at any time transported, handled, stored, treated, disposed of, or processed as **WASTE**.

4.  <u>Waste Site, Abandoned Premises, or Underground Storage Tanks:</u>

**POLLUTION CLEAN UP COSTS** arising out of or in any way related to any actual, alleged, or threatened **POLLUTION INCIDENT** at, from, or related to any:

a.  **WASTE SITE**;

b.  Premises, site, or location any **INSURED** has sold, given away, or abandoned; or

c.  **UNDERGROUND STORAGE TANKS**.

**D.  Personal and Advertising Injury Liability Exclusions**

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.C. Personal and Advertising Injury Liability;

This policy does not apply to:

1.  <u>Breach of Contract</u>:

    **PERSONAL AND ADVERTISING INJURY** arising out of a Breach of Contract, except an implied contract to use another's advertising idea in **YOUR ADVERTISEMENT**.

2.  <u>Contractual Liability</u>:

    **PERSONAL AND ADVERTISING INJURY** for which the **INSURED** has assumed liability in a contract or agreement.  This Exclusion does not apply to liability for damages that the **INSURED** would have in the absence of the contract or agreement.

3.  <u>Criminal Acts</u>:

    **PERSONAL AND ADVERTISING INJURY** arising out of any Criminal Act or fraudulent conduct committed by, with the consent or knowledge of, or at the direction of the **INSURED**.

4.  <u>Electronic Chatrooms or Bulletin Boards</u>:

    **PERSONAL AND ADVERTISING INJURY** arising out of an Electronic Chatroom or Bulletin Board the **INSURED** hosts, owns, or over which the **INSURED** exercises control.

5.  <u>Infringement of Copyright, Patent, Trademark, or Trade Secret</u>:

    **PERSONAL AND ADVERTISING INJURY** arising out of the Infringement of Copyright, Patent, Trademark, Trade Secret, or other intellectual property rights. Under this Exclusion, such other intellectual property rights do not include the use of another's advertising idea in **YOUR ADVERTISEMENT**.

    However, this Exclusion does not apply to infringement, in **YOUR ADVERTISEMENT**, of copyright, trade dress, or slogan.

6.  <u>Insureds In Media and Internet Type Businesses</u>:

    a.  **PERSONAL AND ADVERTISING INJURY** committed by an **INSURED** whose business is:

        (1)  Advertising, broadcasting, webcasting, publishing, or telecasting;

        (2)  Designing or determining content of websites for others; or

        (3)  An Internet search, access, content, or service provider.

    b.  **PERSONAL AND ADVERTISING INJURY** arising out of:

        (1)  Controlling, creating, designing, or developing of another's Internet site;

        (2)  Controlling, creating, designing, developing, determining, or providing the content or material of another's Internet site;

        (3)  Controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet, or another's Internet site; or

        (4)  Publication of content or material on or from the Internet, other than material developed by **YOU** or at **YOUR** location.

    However, this Exclusion does not apply to Paragraphs a., b., and c. of the definition of **PERSONAL AND ADVERTISING INJURY**.  For the purposes of this Exclusion, the placing of frames, borders, links, or advertising, for **YOU** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing, or telecasting.

7.  <u>Knowing Violation of Rights of Another</u>:

    **PERSONAL AND ADVERTISING INJURY** caused by or at the direction of the **INSURED** with the knowledge that the act would violate the rights of another and would inflict **PERSONAL AND ADVERTISING INJURY**.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000025

8. <u>Material Published with Knowledge of Falsity</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of oral or written publication of material, if done by or at the direction of the **INSURED** with knowledge of its falsity.

9. <u>Material Published Prior to Policy Period</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

10. <u>Pollution</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS** at any time.

11. <u>Pollution-Related</u>:

   Any loss, cost, or expense arising out of any:

   a. Request, demand, order, or statutory or regulatory requirement that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, neutralize, mitigate, or in any way respond to, or assess the effects of **POLLUTANTS**; or

   b. **CLAIM**, **SUIT**, or proceeding by or on behalf of a governmental authority for damages because of identifying, abating, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, neutralizing, mitigating, or in any way responding to or assessing the effects of **POLLUTANTS**.

12. <u>Quality or Performance of Goods – Failure to Conform to Statements</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in **YOUR ADVERTISEMENT**.

13. <u>Unauthorized Use of Another's Name or Product</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of the Unauthorized Use of Another's Name or Product in **YOUR** e-mail address, domain name, **METATAG**, or any other similar tactics to mislead another's potential customers.

14. <u>Wrong Description of Prices</u>:

   **PERSONAL AND ADVERTISING INJURY** arising out of the wrong description of the price of goods, products, or services stated in **YOUR ADVERTISEMENT**.

E. **Medical Payments Exclusions**

   The following Exclusions apply to Section II.D. Medical Payments;

   **WE** will not pay medical expenses for **BODILY INJURY**:

   1. <u>Any Insured</u>:

      To any **INSURED**, except **VOLUNTEER WORKERS**.

   2. <u>Athletic Activities</u>:

      To a person injured while practicing, instructing, or participating in any physical exercises, games, sports, or athletic contests.

   3. <u>Bodily Injury and Property Damage Coverage Exclusions</u>:

      Excluded under Section II. A. Bodily Injury and Property Damage Liability.

   4. <u>Hired Person</u>:

      To a person hired to do work for or on behalf of any **INSURED** or a tenant of any **INSURED**.

   5. <u>Injury on Normally Occupied Premises</u>:

      To a person injured on that part of premises **YOU** own or rent that the person normally occupies.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000026

6. **Products-Completed Operations Hazard**:

Included within the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

7. **Workers' Compensation or Similar Laws**:

To a person, whether or not an **EMPLOYEE** of any **INSURED**, if benefits for the **BODILY INJURY** are payable or must be provided under a Workers' Compensation or disability benefits law or a similar law.

## VIII. GENERAL CONDITIONS

A. **Bankruptcy**

Bankruptcy or insolvency of the **INSURED** or of the **INSURED**'s estate will not relieve **US** of **OUR** obligations under this policy.

B. **Cancellation**

1.  The first **NAMED INSURED** shown on the Declarations Page may cancel this policy by mailing or delivering to **US** advance written notice of Cancellation.

2.  **WE** may cancel this policy by mailing or delivering to the first **NAMED INSURED** written notice of Cancellation at least:

    a.  10 days before the effective date of Cancellation if **WE** cancel for nonpayment of premium; or

    b.  60 days before the effective date of Cancellation if **WE** cancel for any other reason.

3.  **WE** will mail or deliver **OUR** notice to the first **NAMED INSURED**'s last mailing address known to **US**.

4.  Notice of Cancellation will state the effective date of Cancellation. The policy period will end on that date.

5.  If this policy is cancelled, **WE** will send the first **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the first **NAMED INSURED** cancels, the refund may be less than pro rata. The Cancellation will be effective even if **WE** have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

C. **Changes**

This policy contains all the agreements between **YOU** and **US** concerning the insurance afforded. The first **NAMED INSURED** shown on the Declarations Page is authorized to make Changes in the terms of this policy with **OUR** consent. This policy's terms can be amended or waived only by endorsement issued by **US** and made a part of this policy.

D. **Duties in the Event of Occurrence, Offense, Claim, or Suit**

1.  **YOU** must see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** is notified as soon as practicable of any **OCCURRENCE** or any offense which may result in a **CLAIM**. To the extent possible, notice should include:

    a.  How, when, and where the **OCCURRENCE** or offense took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the **OCCURRENCE** or offense.

2.  If a **CLAIM** is made or **SUIT** is brought against any **INSURED**, **YOU** must:

    a.  Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

    b.  Notify **US** and see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

3.  **YOU** and any other involved **INSURED** must:

    a.  Immediately send **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** copies of any demands, notices, summonses, or legal papers received in connection with the **CLAIM** or **SUIT**;

    b.  Authorize **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** to obtain records and other information;

---

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000027

c.   Cooperate with **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

d.   Assist **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of injury or damage to which this policy may also apply.

4.   No **INSURED** will, except at that **INSURED**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent of **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC**.

5.   If a **CONTROL OF WELL INCIDENT** occurs, **YOU** agree, at **YOUR** own cost or expense, subject to Section VI. Supplementary Payments, A.3. Control of Well Expenses, to promptly and diligently take any steps legally required or necessary to engage in **CONTROL OF WELL ACTIVITIES** to remedy the problem.

In the event of a **CLAIM** call 1.877.515.CLMS (1.877.515.2567).

E.   **Duties in the Event of a Pollution Incident**

1.   **YOU** must take reasonable steps to mitigate the damage because of the **POLLUTANTS** and commence the clean up of **POLLUTANTS**.

2.   **YOU** must notify **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable, but no later than 90 days (or 120 days, if **YOU** are a **NON-OPERATING WORKING INTEREST** owner) of when any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** first gained knowledge of the **POLLUTION INCIDENT**. The notice should include:

a.   How, when, and where the **POLLUTION INCIDENT** took place; and

b.   The nature and location of any injury or damage arising out of the **POLLUTION INCIDENT**.

3.   If a **CLAIM** is made or **SUIT** is brought against any **INSURED** arising out of a **POLLUTION INCIDENT**, **YOU** must:

a.   Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

b.   Notify **US** and see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

4.   **YOU** and any other involved **INSURED** must:

a.   Immediately send **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** copies of any demands, notices, summonses, or legal papers received in connection with the **CLAIM** or **SUIT**;

b.   Authorize **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** to obtain records and other information;

c.   Cooperate with **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

d.   Assist **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of **POLLUTION CLEAN UP COSTS**, injury or damage to which this policy may also apply.

In the event of a **POLLUTION INCIDENT** call 1.877.515.CLMS (1.877.515.2567).

F.   **Examination of Your Books and Records**

**WE** may examine and audit **YOUR** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

G.   **Independent Counsel**

In the event **YOU** are entitled by law to select Independent Counsel to defend **YOU** at **OUR** expense, the attorney fees and all other litigation expenses **WE** must pay to that counsel are limited to the rates **WE** actually pay to counsel **WE** retain in the ordinary course of **OUR** business in the defense of **CLAIMS** or **SUITS** in the community where the **CLAIM** or **SUIT** is being defended. Additionally, **WE** may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending **CLAIMS** or **SUITS** similar to the one against **YOU**, and to require such counsel to have malpractice insurance coverage. As respects any such counsel, **YOU** agree that **YOU** and that counsel will respond timely to **OUR** request for information regarding the **CLAIM** or **SUIT** to the extent allowable by law. Furthermore, the **INSURED** may at anytime, by its signed consent, freely and fully waive its right to select Independent Counsel.

GEM000028

**H.    Inspections and Surveys**

1.    **WE** have the right to:

a.    Make Inspections and Surveys at any time;

b.    Give **YOU** reports on the conditions **WE** find; and

c.    Recommend changes.

2.    **WE** are not obligated to make any inspections, surveys, reports, or recommendations, and any such actions **WE** do undertake relate only to insurability and the premiums to be charged. **WE** do not make safety inspections. **WE** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. In addition, **WE** do not warrant that conditions:

a.    Are safe or healthful; or

b.    Comply with laws, regulations, codes, or standards.

3.    Paragraphs 1. and 2. of this condition apply not only to **US**, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

4.    Paragraph 2. of this condition does not apply to any inspections, surveys, reports, or recommendations **WE** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels, or elevators.

**I.    Legal Action Against Us**

No person or organization has a right under this policy:

1.    To join **US** as a party or otherwise bring **US** into a **SUIT** asking for damages or **POLLUTION CLEAN UP COSTS** from an **INSURED**; or

2.    To sue **US** on this policy unless all of its terms have been fully complied with.

A person or organization may sue **US** to recover on an **AGREED SETTLEMENT** or on a final judgment against an **INSURED**; but **WE** will not be liable for damages or **POLLUTION CLEAN UP COSTS** that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.

**J.    Nonrenewal**

If **WE** decide not to renew this policy, **WE** will mail or deliver to the first **NAMED INSURED** shown on the Declarations Page written notice of the Nonrenewal not less than 60 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

**K.    Other Insurance**

If other valid and collectible insurance is available to the **INSURED** for a loss **WE** cover under Section II.A. Bodily Injury and Property Damage Liability, Section II.B. Pollution Clean Up Costs, or Section II.C. Personal and Advertising Injury Liability of this policy, **OUR** obligations are limited as follows:

1.    <u>Primary Insurance</u>:

This policy is primary except when Paragraph 2. Excess Insurance below applies. If this policy is primary, **OUR** obligations are not affected unless any of the Other Insurance is also primary. Then, **WE** will share with all other policies by the method described in Paragraph 3. Method of Sharing below.

2.    <u>Excess Insurance</u>:

a.    This policy is excess over:

(1)    **Any Other Insurance:**

Any of the Other Insurance, whether primary, excess, contingent, or on any other basis:

(a)    **Your Work:**

That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for **YOUR WORK**;

---

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000029

**(b) Fire:**

That is Fire insurance for premises rented to **YOU** or temporarily occupied by **YOU** with permission of the owner;

**(c) Tenant:**

That is insurance purchased by **YOU** to cover **YOUR** liability as a Tenant for **PROPERTY DAMAGE** to premises rented to **YOU** or temporarily occupied by **YOU** with permission of the owner;

**(d) Aircraft, Auto, or Watercraft:**

If the loss arises out of the ownership, maintenance or use of any Aircraft, **AUTO**, or Watercraft to the extent not subject to Section VII.B.1. and Section VII.C.1. Aircraft, Auto, or Watercraft Exclusions;

**(e) Non-operating Working Interest:**

That is available to any person or organization owning a **NON-OPERATING WORKING INTEREST**. However, this policy will be primary and **NON-CONTRIBUTORY** if **YOU** and the **NON-OPERATING WORKING INTEREST** owner have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will be primary and **NON-CONTRIBUTORY**;

**(f) Operators Extra Expense/Control of Well:**

That is Operators Extra Expense, Control of Well, or similar insurance;

**(g) Pollution:**

That is Pollution liability insurance or any other insurance to cover a **POLLUTION INCIDENT**;

**(h) Additional Insured:**

That is available to any person or organization that is an Additional Insured. However, with respect to the person or organization made an Additional Insured for liability arising out of **YOUR** operations, or liability arising out of premises owned by or rented to **YOU**, this policy will be primary and **NON-CONTRIBUTORY** if **YOU** and the Additional Insured have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will be primary and **NON-CONTRIBUTORY**.

**(2) Any Other Primary Insurance**

Any Other Primary Insurance available to **YOU** covering liability for damages or **POLLUTION CLEAN UP COSTS** arising out of the premises or operations, or the products and completed operations, for which **YOU** have been added as an Additional Insured.

**b.** When this insurance is excess, **WE** will have no duty under Section II.E. Duty to Defend to defend the **INSURED** against any **SUIT** if any other insurer has a Duty to Defend the **INSURED** against that **SUIT**. If no other insurer defends, **WE** will undertake to do so, but **WE** will be entitled to the **INSURED**'s rights against all those other insurers.

**c.** When this policy is excess over Other Insurance, **WE** will pay only **OUR** share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such Other Insurance would pay for the loss in the absence of this policy; and

**(2)** The total of all deductible and self-insured amounts under all that Other Insurance.

**d.** **WE** will share the remaining loss, if any, with any Other Insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits Of Insurance shown on the Declarations Page of this policy.

**3. Method of Sharing**

If all of the Other Insurance permits contribution by equal shares, **WE** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the Other Insurance does not permit contribution by equal shares, **WE** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**L.  Premiums**

The first **NAMED INSURED** shown on the Declarations Page:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums **WE** pay.

**M.  Premium Audit**

1. **WE** will compute all premiums for this policy in accordance with **OUR** rules and rates.

2. Premium shown in this policy as estimated premium is a deposit premium only.  At the close of each audit period, **WE** will compute the earned premium for that period and send notice to the first **NAMED INSURED**.  The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the deposit and audit premiums paid for the policy period is greater than the earned premium, **WE** will return the excess to the first **NAMED INSURED**.

3. The first **NAMED INSURED** must keep records of the information **WE** need for premium computation, and send **US** copies at such times as **WE** may request.

**N.  Representations**

By accepting this policy, **YOU** agree that:

1. The statements on the Declarations Page are accurate and complete;

2. Those statements are based upon representations **YOU** made to **US**;

3. **WE** have issued this policy in reliance upon **YOUR** representations; and

4. **YOUR** failure to disclose all hazards or prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards, prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses is not intentional or willful.

**O.  Separation of Insureds**

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this policy to the first **NAMED INSURED**, this policy applies:

1. As if each **NAMED INSURED** were the only **NAMED INSURED**; and

2. Separately to each **INSURED** against whom **CLAIM** is made or **SUIT** is brought.

**P.  Transfer of Rights of Recovery Against Others to Us and Waiver of Subrogation**

If the **INSURED** has rights to recover all or part of any payment **WE** have made under this policy, those rights are transferred to **US**.  The **INSURED** must do nothing, after the **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, to impair them.  At **OUR** request, the **INSURED** will bring **SUIT** or transfer those rights to **US** and help **US** enforce them.

However, **WE** agree to waive **OUR** right of recovery against any person or organization with whom **YOU** have agreed, by written contract or written agreement in effect during the policy period and executed before the **OCCURRENCE, POLLUTION INCIDENT**, or offense, to waive those rights of recovery.

**Q.  Use of Titles**

The titles to the various sections, subsections, paragraphs, subparagraphs, and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand, or otherwise affect the provisions of such sections, subsections, paragraphs, subparagraphs, and endorsements.

## IX. <u>DEFINITIONS</u>

**ACID RAIN** means rain containing high concentrations of acids, including, but not limited to, sulfur dioxide and nitrogen oxides.

**ADVERTISEMENT** means a notice that is broadcast or published to the general public or specific market segments about **YOUR** goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this definition:
    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and
    **b.** Regarding websites, only that part of a website that is about **YOUR** goods, products, or services for the purposes of attracting customers or supporters is considered an **ADVERTISEMENT**.

**AGENT** means a person or persons authorized by **YOU** to act on **YOUR** behalf in relation to **YOUR** oil, gas, or other mineral properties.

**AGREED SETTLEMENT** means a settlement and release of liability signed by **US**, the **INSURED** and the claimant or the claimant's **LEGAL REPRESENTATIVE**.

**ASBESTOS** means **ASBESTOS** in any form, including, but not limited to, asbestos-containing products, asbestos fibers, and asbestos dust, and including its presence or use in any alloy, by-product, or other material or **WASTE**.

**AUTO** means:
    **a.** A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.
However, **AUTO** does not include **MOBILE EQUIPMENT**.

**BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** means the entity that performs underwriting and claims services for this policy.

**BODILY INJURY** means physical injury, sickness, or disease sustained by a person, including death, resulting from any of these at any time. **BODILY INJURY** includes mental anguish or other mental injury to that person sustaining physical injury.

**CAPITAL EXPENDITURE** means either money voluntarily spent or a charge voluntarily incurred for additions, improvements, or betterments to equipment or real property. **CAPITAL EXPENDITURE** includes, but is not limited to, money spent or a charge incurred for the purpose of complying with any order or

request of any regulatory agency that is intended, in whole or in part, to prevent or mitigate future **POLLUTION INCIDENTS**.

**CLAIM** means a request or demand received by **YOU** for monetary damages or **POLLUTION CLEAN UP COSTS**.

**CONTROL OF WELL ACTIVITIES** means:
    **a.** Controlling or bringing under control;
    **b.** Drilling of any relief, replacement, or substitute well or hole for; or
    **c.** Extinguishing a fire in, at, or from;
any oil, gas, mineral, geothermal, or water well(s) and/or hole where a **CONTROL OF WELL INCIDENT** has taken place.

**CONTROL OF WELL EXPENSES** means costs or expenses of controlling or bringing under control any oil, gas, mineral, geothermal, or water well(s) and/or hole, up to and including, without limitation:
    **a.** Expenses incurred in extinguishing fire in or from such well(s); and
    **b.** Costs and expenses incurred in drilling relief oil, gas, mineral, geothermal, or water well(s);
and/or hole(s) whether or not such relief well(s) or hole(s) is successful.

**CONTROL OF WELL INCIDENT** means an unintended flow of drilling fluid, oil, gas, or water from any oil, gas, mineral, geothermal, or water well(s) and /or hole, and cannot be controlled by a blowout preventer, storm chokes, other equipment, or control measures.

**ELECTRONIC DATA** means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

**ELIGIBLE POLLUTION INCIDENT** means any **POLLUTION INCIDENT** that meets the following requirements:
    **a.** The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;
    **b.** The **POLLUTION INCIDENT** commenced abruptly and instantaneously and can be identified as having first commenced during the policy period;
    **c.** The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and

GEM000032

d.  The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**. However, if **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

**EMPLOYEE** includes a **LEASED WORKER**. **EMPLOYEE** does not include a **TEMPORARY WORKER**.

**EXECUTIVE OFFICER** means a person holding any of the officer positions created by **YOUR** charter, constitution, by-laws, or any other similar governing document.

**FUNGI** means any type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by **FUNGI**.

**GOVERNMENT IDENTIFIED CONTAMINATED SITE** means any premises, site, or location that has been placed on, proposed for placement, or otherwise identified with the National Priorities List of the Comprehensive Environmental Response, Compensation, and Liability Act; Superfund Amendments and Reauthorization Act, or any other similar state or national governmental authority's legislation creating a priority list for the clean up of **POLLUTANTS**.

**HOSTILE FIRE** means one which becomes uncontrollable or breaks out from where it was intended to be.

**IMPAIRED PROPERTY** means tangible property, other than **YOUR PRODUCT** or **YOUR WORK**, that cannot be used or is less useful because:

a.  It incorporates **YOUR PRODUCT** or **YOUR WORK**, that is known or thought to be defective, deficient, inadequate, or dangerous; or
b.  **YOU** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment, or removal of **YOUR PRODUCT** or **YOUR WORK**, or **YOUR** fulfilling the terms of the contract or agreement.

**INDEMNITEE** means a person or organization that **YOU** have agreed under a written contract or written agreement to indemnify or hold harmless.

**INSURED** means a person or organization qualifying as an **INSURED** in Section I. Named Insureds And Insureds.

**INSURED CONTRACT** means:

a.  That part of any written contract or agreement pertaining to **YOUR** business including, but not limited to, an indemnification required by:
    (1)  A master service agreement;
    (2)  Drilling contract;
    (3)  Rental agreement; or
    (4)  Any other oilfield contract;

under which **YOU** assume the liability of another party to pay for **BODILY INJURY** or **PROPERTY DAMAGE** to a third person or organization. Paragraph a. does not include that part of any contract or agreement:

    (1)  That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:
        (a)  Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or
        (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
    (2)  Under which the **INSURED**, if an architect, engineer, or surveyor, assumes liability for an injury or damage arising out of the **INSURED**'s rendering or failure to render **PROFESSIONAL SERVICES**, including those listed in (1)(b) above and supervisory, inspection, architectural, or engineering activities.

b.  That part of any written contract or agreement, such as a Joint Operating Agreement, that requires the **INSURED** to share in the payment of expenses resulting from **BODILY INJURY** or **PROPERTY DAMAGE** because of an **OCCURRENCE** during this policy period based upon the **INSURED**'s obligation to pay a percentage of expenses. However, the obligation to pay expenses will be limited to the **INSURED**'s ownership interest.

c.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner is not an **INSURED CONTRACT**;

d.  A sidetrack agreement;
e.  An easement or license agreement;
f.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or
g.  An elevator maintenance agreement.

**LEAD** means **LEAD** in any form, including, but not limited to, lead-containing products, and lead dust, and including its presence or use in any product, alloy, by-product, or other material or **WASTE**.

GEM000033

**LEASED WORKER** means a person leased to **YOU** by a labor leasing firm under a written agreement between **YOU** and the labor leasing firm, to perform duties related to the conduct of **YOUR** business. **LEASED WORKER** does not include a **TEMPORARY WORKER**.

**LEGAL REPRESENTATIVE** means any person, executor, or trustee appointed by **YOU**, or by operation of law or a court, to act on **YOUR** behalf after **YOUR** death.

**LOADING OR UNLOADING** means the handling of property:
    **a.**    After it is moved from the place where it is accepted for movement into or onto an aircraft, **AUTO**, or watercraft;
    **b.**    While it is in or on an aircraft, **AUTO**, or watercraft; or
    **c.**    While it is being moved from an aircraft, **AUTO**, or watercraft to the place where it is finally delivered;
but **LOADING OR UNLOADING** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **AUTO**, or watercraft.

**MANAGERS** mean the individual or individuals designated in **YOUR** governing documents to act as **MANAGER**.

**MEMBERS** mean persons or entities designated in **YOUR** governing documents as **MEMBERS** or other such terminology that establishes ownership.

**METATAG** means hidden or embedded text or code that is not seen by persons viewing the website, but that operates to attract search engines to that site.

**MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:
    **a.**    Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;
    **b.**    Vehicles maintained for use solely on or next to premises **YOU** own or rent;
    **c.**    Vehicles that travel on crawler treads;
    **d.**    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
        **(1)**  Power cranes, shovels, loaders, diggers, or drills; or
        **(2)**  Road construction or resurfacing equipment such as graders, scrapers, or rollers;
    **e.**    Vehicles not described in Paragraph a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
        **(1)**  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or
        **(2)**  Cherry pickers and similar devices used to raise or lower workers;
    **f.**    Vehicles not described in Paragraph a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of

permanently attached equipment are not **MOBILE EQUIPMENT** but will be considered **AUTOS**:
    **(1)**  Equipment designed primarily for:
        **(a)**  Snow removal;
        **(b)**  Road maintenance, but not construction or resurfacing; or
        **(c)**  Street cleaning;
    **(2)**  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
    **(3)**  Air compressors, pumps, and generators including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.
However, **MOBILE EQUIPMENT** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOS**.

**NAMED INSURED** means a person or organization qualifying as a **NAMED INSURED** in Section I.A. Named Insured(s) of this policy.

**NAMED STORM** means a storm system that has been declared a tropical storm or hurricane and assigned a name by the National Hurricane Center or the Central Pacific Hurricane Center of the National Weather Service (hereafter referred to as NHC and CPHC). For purposes of this policy, a **NAMED STORM** begins at the time a Watch or Warning is issued by the NHC or CPHC for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the NHC or CPHC.

**NON-CONTRIBUTORY** means that other available insurance will apply as excess and will not contribute as primary to the insurance provided by this policy.

**NON-OPERATING WORKING INTEREST** means an interest in the ownership of and participation in the operating expenses of an oil, gas, or other mineral property, that is owned by a person or organization who is not designated as **OPERATOR** of that property and who is without operating rights of that property.

**NUCLEAR FACILITY** means any:
    **a.**    **NUCLEAR REACTOR**;
    **b.**    Equipment or device designed or used for separating the isotopes of plutonium or uranium; processing or utilizing **NUCLEAR SPENT FUEL**; or handling, processing or packaging **NUCLEAR WASTE**;
    **c.**    Equipment or device used for the processing, fabricating, or alloying of **NUCLEAR MATERIAL**, if at any time the total amount of such material in the custody of the **INSURED** at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or two hundred-fifty (250) grams of uranium 235; or

---

    *Includes copyrighted material of Insurance Services Office, Inc., with its permission*    

© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000034

d.  Structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **NUCLEAR WASTE**;

And includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations.

**NUCLEAR HAZARDOUS PROPERTIES** means radioactive, toxic, or explosive properties.

**NUCLEAR MATERIAL** means by-product material, source material, special **NUCLEAR MATERIAL**, or naturally occurring **RADIOACTIVE MATERIAL**, including, but not limited to, that naturally occurring **RADIOACTIVE MATERIAL** referred to as NORM or the technically enhanced naturally occurring **RADIOACTIVE MATERIAL** referred to as TNORM.  By-product material, source material, or special **NUCLEAR MATERIAL** have the meaning given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

**NUCLEAR PROPERTY DAMAGE** includes all forms of radioactive contamination of property.

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**NUCLEAR SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**.

**NUCLEAR WASTE** means any **WASTE** material containing **NUCLEAR MATERIAL**, other than tailings or **WASTES** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; and resulting from the operation by any person or organization of any **NUCLEAR FACILITY** described in Paragraphs a. and b. of the definition of **NUCLEAR FACILITY**.

**OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**OIL OR GAS SITE** means any site, location, or premises at which **YOU** or any person or organization acting on **YOUR** behalf is conducting oil, gas, or other mineral exploration or production activities.  **OIL OR GAS SITE** does not include any location used for office or administrative purposes or storage or maintenance of any vehicles or equipment.

**OIL OR GAS SITE CONTRACTOR** means any person or entity that has been contracted by **YOU** or on **YOUR** behalf to operate, maintain, test, or gauge any well, tank, or other equipment related to any of **YOUR** oil, gas, or other mineral properties.

**OILFIELD SERVICES CONTRACTOR** means any person or entity that is primarily engaged in performing oil and gas field services for others on a contract or fee basis.  Services included are: well surveying; running, cutting, and pulling casing tubes and rods; cementing wells; shooting wells; perforating well casings; acidizing and chemically treating wells; cleaning out, bailing, and swabbing wells; fishing for tools; servicing wells; well logging; and testing.

**OPERATOR** means any person or entity that is designated to manage, control, and operate oil, gas, or other mineral properties.

**OUR** means the company listed on the Declarations Page of this policy that insures **YOU**.

**PERSONAL AND ADVERTISING INJURY** means injury, including consequential **BODILY INJURY**, arising out of one or more of the following offenses:
a.  False arrest, detention, or imprisonment;
b.  Malicious prosecution;
c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;
d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
f.  The use of another's advertising idea in **YOUR ADVERTISEMENT**; or
g.  Infringing upon another's copyright, trade dress, or slogan in **YOUR ADVERTISEMENT**.

**POLLUTANTS** mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and **WASTE**.

**POLLUTION CLEAN UP COSTS** means reasonable expenses incurred to investigate, quantify, monitor, abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS**.  Reasonable expenses shall not include:
a.  Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas; or
b.  Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM**.

**POLLUTION INCIDENT** means the emission, discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000035

**PRODUCING WELL** means an oil or gas well(s) and/or hole(s) that has been actively producing oil or gas as intended for use, sale, or distribution. **PRODUCING WELL** does include an oil or gas well(s) and/or hole(s) that has been temporarily shut in.

**PRODUCTS-COMPLETED OPERATIONS HAZARD**

a. Includes all **BODILY INJURY** and **PROPERTY DAMAGE** occurring away from premises **YOU** own or rent and arising out of **YOUR PRODUCT** or **YOUR WORK** except:

(1) Products that are still in **YOUR** physical possession; or

(2) Work that has not yet been completed or abandoned. However, **YOUR WORK** will be deemed completed at the earliest of the following times:

(a) When all of the work called for in **YOUR** contract has been completed;

(b) When all of the work to be done at the job site has been completed if **YOUR** contract calls for work at more than one job site; or

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by **YOU**, and that condition was created by the **LOADING OR UNLOADING** of that vehicle by any **INSURED**;

(2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or

(3) Products or operations for which the classification in **OUR** rules indicates that such products or completed operations are not subject to Products-Completed Operations Hazard Limit.

**PROFESSIONAL SERVICES** means technical or unique functions performed by persons or organizations whose occupation is the rendering of such services and for which such services are rendered pursuant to a license, certificate, or other credential issued by federal, state, or local governments. **PROFESSIONAL SERVICES**, include, but are not limited to: accounting; architecture; dentistry; engineering; funeral and embalming services; landscape architecture; land surveying; legal; medicine, including nursing and allied health professions; optometry; pharmacy; real estate; real estate appraising; preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or supervisory or inspection activities performed as part of any related architectural or engineering activities.

**PROPERTY DAMAGE** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.

For the purposes of this policy, **ELECTRONIC DATA** is not tangible property.

**RADIOACTIVE MATERIAL** means any solid, liquid, or gaseous substance which emits radiation, including, but not limited to, naturally occurring **RADIOACTIVE MATERIAL** (NORM) or technically enhanced naturally occurring **RADIOACTIVE MATERIAL** (TNORM).

**SILICA** means silicon dioxide (occurring in crystalline, amorphous, and impure forms), silica particles, and silica dust, or silica compounds.

**SILICA-RELATED DUST** means a mixture or combination of **SILICA** and other dust or particles.

**SUIT** means a civil proceeding where **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** to which this policy applies are alleged. **SUIT** includes:

a. An arbitration proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** must submit or does submit with **OUR** consent; or

b. Any other alternative dispute resolution proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** submits with **OUR** consent.

**TEMPORARY WORKER** means a person who is furnished to **YOU** to substitute for a permanent **EMPLOYEE** on leave or to meet seasonal or short-term workload conditions.

**UNDERGROUND OILFIELD EQUIPMENT** means any drill bit, tool, pump, or other drilling or well servicing machinery, or equipment located beneath the surface of the earth in any well or hole or beneath the surface of any body of water.
**UNDERGROUND OILFIELD EQUIPMENT** is not equipment that is above ground such as a monkey board.

**UNDERGROUND RESOURCES** means oil, gas, water, or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water.

GEM000036

**UNDERGROUND STORAGE TANK** means any tank, vessel, or storage facility, including associated piping and equipment connected to such tank, vessel, or storage facility, buried below the surface of the ground or water, or which at any time had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of the tank, is below the surface of the ground or water.

**US** means the company listed on the Declarations Page of this policy that insures **YOU**.

**VOLUNTEER WORKER** means a person who is not **YOUR EMPLOYEE**, and who donates his or her work and acts at the direction of and within the scope of duties determined by **YOU**, and is not paid a fee, salary, or other compensation by **YOU** or anyone else for their work performed for **YOU**.

**WAR** means a declared **WAR**, undeclared **WAR**, or civil **WAR**; warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**WASTE** means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed. Fluids or substances injected or recovered from the **WELL BORE** at an **OIL OR GAS SITE**, will not be included in the meaning of **WASTE**. **WASTE** includes, but is not limited to, drilling mud, saltwater, and produced fluid.

**WASTE SITE** means a site or any part of a site which is or was used for handling, treatment, storage, disposal, or processing of **WASTE**. Saltwater injection wells or saltwater disposal wells at premises **YOU** own, lease, or rent shall not be included in the meaning of **WASTE SITE.**

**WE** means the company listed on the Declarations Page of this policy that insures **YOU**.

**WELL BORE** means any oil, gas, mineral, geothermal or water well, hole, or formation, along with any permanently attached casing, tubing, or piping in or through which exploration for or production of any substance is carried on.

**YOU** means the **NAMED INSURED(S)**.

**YOUR** means belonging to the **NAMED INSURED**.

**YOUR PRODUCT**
    **a.**   Means:
        **(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
            **(a)**  **YOU**;
            **(b)**  Others trading under **YOUR** name; or
            **(c)**  A person or organization whose business or assets **YOU** have acquired; and
        **(2)**  Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.
    **b.**   Includes:
        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of **YOUR PRODUCT**; and
        **(2)**  The providing of or failure to provide warnings or instructions.
    **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**YOUR WORK**
    **a.**   Means:
        **(1)**  Work or operations performed by **YOU** or on **YOUR** behalf; and
        **(2)**  Materials, parts, or equipment furnished in connection with such work or operations.
    **b.**   Includes:
        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of **YOUR WORK**; and
        **(2)**  The providing of or failure to provide warnings or instructions.

GEM000037

## X. INDEX

Acid Rain ..........................................................10, 25
Additional Insured.........................................4, 16, 23
Agreed Settlement .............................................22, 25
Aircraft ..............................................14, 17, 23, 27
Asbestos ....................................................10, 11, 25
Athletic Activities .....................................................19
Auto ..........................................13,14, 16, 17, 23, 25, 27
Breach of Contract .................................................18
Cancellation ............................................................20
Capital Expenditures...............................................11
Care, Custody, and Control .................................4, 14
Contractual Liability .........................................14, 18
Control of Well Activities ................................9, 21, 25
Control of Well Expenses ...........................9, 11, 21, 25
Control of Well Incident..............................9, 11, 21, 25
Coverage Territory ...............................................6, 7
Cross Liability .........................................................24
Criminal Acts ...........................................................18
Damage to Impaired Property...................................14
Damage to Property............................................4, 14
Damage to Your Product ..........................................15
Damage to Your Work ..............................................15
Definitions ..............................................................25
Duties in the Event of A Pollution Incident.................21
Duties in the Event of An Occurrence........................20
Duty to Defend.....................................................6, 23
Electronic Data ...........................................15, 25, 29
Eligible Pollution Incident.....................5, 6, 7, 16, 17, 25
Employee...............................4, 5, 7, 15, 20, 26, 29, 30
Employer's Liability .................................................15
Employment-Related Practices .................................11
Excess ........................................................22, 23, 24, 27
Executive Officer.................................................4, 26
Expected or Intended Injury......................................15
Fines or Penalties ...................................................12
Fungi or Bacteria ....................................................12
Government Identified Contaminated Site.............12, 26
Hired Person............................................................19
Hostile Fire......................................16, 17, 25, 26
Impaired Property .........................................13, 14, 26
In Rem ......................................................................5
Indemnitee ......................................................9, 10, 26
Insured Contract .......................................9, 14, 15, 26
Lead..........................................................10, 11, 26
Leased Worker .......................................................27

Legal Representative....................................4, 5, 25, 27
Limits of Insurance............................6, 8, 12, 13, 15, 17, 23, 24
Loading Or Unloading ...........................13, 17, 27, 29
Medical Expenses...........................................6, 8, 19
Mobile Equipment .............................5, 14, 16, 25, 27
Named Insured(s) ..........................3, 7, 9, 20, 22, 24, 26, 27, 30
Named Storm......................................................8, 27, 28
Newly Acquired Organization.....................................3
Non-Contributory...............................................23, 27
Non-Operating Working Interest .......3, 4, 5, 6, 11, 21, 23, 26, 27
Nonrenewal ............................................................22
Notice of Occurrence ................................................7
Nuclear...........................................................12, 27, 28
Oil or Gas Site....................................5, 6, 7, 26, 28, 30
Oil or Gas Site Contractor ........................5, 6, 7, 21, 25, 28
Oilfield Services Contractor .................................14, 28
Operator(s).................5, 6, 7, 11, 14, 21, 23, 25, 27, 28
Other Insurance ....................................5, 22, 23
Permissive User of Mobile Equipment .........................5
Premium Audit ........................................................24
Primary Non-Contributory ........................................23
Producing Well .....................................................9, 29
Products-Completed Operations Hazard...........8, 15, 20, 28, 29
Professional Services .................................4, 6, 26, 29
Punitive Damages....................................................12
Radioactive Material ...............................10, 11, 28, 29
Real Estate Managers ...............................................5
Separation of Insureds .............................................24
Silica ....................................................10, 11, 29
Supplementary Payments......................1, 6, 9, 10, 21
Temporary Worker .............................................26, 29
Underground Oilfield Equipment.........................14, 29
Underground Resources .....................................14, 29
Underground Storage Tanks...............................17, 30
Unintended Errors....................................................24
Volunteer Worker ...........................................4, 5, 19, 30
Waiver of Subrogation .............................................24
War .................................................................13, 30
Waste.............................................12, 16, 17, 25, 26, 30
Waste Site.........................................................17, 30
Watercraft ...........................................5, 13, 14, 17, 23, 27
Well Bore ........................................................14, 30
Your Product...........................................13, 14, 15, 26, 28, 30
Your Work ..............................................5, 15, 28, 29, 30

GEM000038

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Deductible Endorsement

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

## SCHEDULE

| Designated Coverage(s): | Amount and Basis of Deductible: | |
|---|---|---|
| | $ | Per |
| **As Per Declarations** | **As Per Declarations** | **As Per Declarations** |

For the purpose of this endorsement, **YOUR** policy is amended to include the following:

A.  **OUR** obligation to pay amounts on **YOUR** behalf applies only to the sum of damages, medical expenses, and **POLLUTION CLEAN UP COSTS** as applicable to such Designated Coverage(s) in excess of any deductible amount(s) stated in the Schedule above.

B.  The deductible basis stated in the Schedule above applies as follows:

 1.  PER CLAIM BASIS.  If the deductible amount indicated in the Schedule above is on a per **CLAIM** basis, that deductible applies to all damages, medical expenses, and **POLLUTION CLEAN UP COSTS** sustained by any one person or organization as a result of any one **OCCURRENCE**, **POLLUTION INCIDENT**, or offense.

 2.  PER OCCURRENCE BASIS.  If the deductible amount indicated in the Schedule above is on a per **OCCURRENCE** basis, that deductible amount applies to all damages, medical expenses, and **POLLUTION CLEAN UP COSTS**, as a result of any one **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, regardless of the number of persons or organizations who sustain damages, medical expenses, and **POLLUTION CLEAN UP COSTS** because of that **OCCURRENCE**, **POLLUTION INCIDENT**, or offense.

C.  **YOUR** selected deductible amount and deductible basis applies to the Designated Coverage(s).

D.  Other than the changes made by this endorsement, the terms of this policy continue to apply, including those with respect to:

 1.  **OUR** right and Duty to Defend the **INSURED** against any **CLAIMS** or **SUITS** seeking those damages; and

 2.  **YOUR** duties in the event of an **OCCURRENCE**, offense, **CLAIM**, **SUIT**, or **POLLUTION INCIDENT**.

E.  **WE** may pay any part or the entire deductible amount to effect settlement of any **CLAIM** or **SUIT** and, upon notification of the action taken, **YOU** must promptly reimburse **US** for such part of the deductible amount as has been paid by **US**.

 **OUR** rights of recovery continue to apply and any amounts recovered will apply first to reimburse **US** for amounts in excess of the deductible.  Any recovery amounts remaining will be used to reimburse **YOU** and **US** for amounts within the deductible.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000039

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Waste Definition Endorsement

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

The following replaces the definition of WASTE in Section IX. Definitions:

WASTE means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed.  Fluids or substances, including, but not limited to, drilling mud, saltwater, and produced fluids, injected or recovered from the WELL BORE at an OIL OR GAS SITE, will not be included in the meaning of WASTE.

---

EGL1217 03 10        © Berkley Oil & Gas Specialty Services, LLC, 2010        **Page 1 of 1**

GEM000040

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Non-operating Working Interest Insurance Ranking Endorsement

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

**A.** Section VIII. General Conditions, Subsection K. Other Insurance, Paragraph 2. Excess Insurance, Subparagraph a.(1)(e) is replaced by the following:

**(e) Non-operating Working Interest:**

That is available to any person or organization owning a **NON-OPERATING WORKING INTEREST**.  However, this policy will be primary and **NON-CONTRIBUTORY** if **YOU** and the **NON-OPERATING WORKING INTEREST** owner have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will be primary and **NON-CONTRIBUTORY**, or if **YOU** and the **NON-OPERATING WORKING INTEREST** owner have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will provide insurance coverage for the benefit of the person or organization owning a **NON-OPERATING WORKING INTEREST**.

**B.** Section VIII. General Conditions, Subsection K. Other Insurance, Paragraph 2. Excess Insurance, Subparagraph a.(2) Any Other Primary Insurance is replaced by the following:

**(2) Any Other Primary Insurance**

**(a)** Any Other Primary Insurance available to **YOU** covering liability for damages or **POLLUTION CLEAN UP COSTS** arising out of the premises or operations, or the products and completed operations, for which **YOU** have been added as an Additional Insured; or

**(b)** Any Other Primary Insurance available to **YOU** covering liability for damages or **POLLUTION CLEAN UP COSTS** arising out of **YOUR NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property, for which **YOU** and the **OPERATOR** have agreed prior to loss, in a written contract or written agreement (including, but not limited to, a Joint Operating Agreement) in effect during the policy period, that the **OPERATOR**'s policy will be primary and **NON-CONTRIBUTORY**, or that **YOU** and the **OPERATOR** have agreed prior to loss, in a written contract or written agreement (including, but not limited to, a Joint Operating Agreement) in effect during the policy period, that the **OPERATOR**'s policy will provide insurance coverage for the benefit of **YOU** as the person or organization owning a **NON-OPERATING WORKING INTEREST**.

GEM000041

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Earlier Notice of Cancellation Provided By Us

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

## SCHEDULE

| Number of Days Notice:   **30** |
| --- |

| Schedule of Person(s) or Organization(s): |
| --- |
| **As Per Declarations** |

**A.**  The following replaces Section VIII. General Conditions, Subsection B. Cancellation, Paragraphs 2.b and 3.:

    **2.  b.**  The Number of Days Notice required for Cancellation for any reason other than nonpayment of premium is amended to the number of days shown in the Schedule above.

    **3.**  Notice of Cancellation will be mailed to the first **NAMED INSURED** and the person(s) or organization(s) listed in the Schedule above.  If no person(s) or organization(s) are listed in the Schedule above then the notice will be mailed only to the first **NAMED INSURED.**

GEM000042

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Service of Suit

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his or her successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, SUIT or proceeding instituted by or on your behalf or any beneficiary hereunder arising out of this policy, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such SUIT may be made upon Assistant Vice President - Claims, Berkley Oil & Gas Specialty Services, LLC, 10375 Richmond Avenue, Suite 1900, Houston, Texas 77042, or his or her representative, and that any SUIT instituted against any one of them upon this policy, we will abide by the final decision of such Court or of any Appellate Court in the event of any appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

A.  The following exclusion is added:

This insurance does not apply to:

**Terrorism**

**ANY INJURY OR DAMAGE** arising, directly or indirectly, out of a **CERTIFIED ACT OF TERRORISM**, or out of an **OTHER ACT OF TERRORISM** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the Coverage Territory. However, with respect to an **OTHER ACT OF TERRORISM**, this exclusion applies only when one or more of the following are attributed to such act:

1.  The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, **WE** will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a.  Physical injury that involves a substantial risk of death; or

    b.  Protracted and obvious physical disfigurement; or

    c.  Protracted loss of or impairment of the function of a bodily member or organ; or

3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an **OTHER ACT OF TERRORISM** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.  For the purposes of this endorsement, the following definitions are added to Section IX. Definitions:

1.  **ANY INJURY OR DAMAGE** means any injury or damage covered under this policy including, but not limited to, **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** as may be defined in this policy.

© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000044

2. **CERTIFIED ACT OF TERRORISM** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **CERTIFIED ACT OF TERRORISM** include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property, or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. **OTHER ACT OF TERRORISM** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **CERTIFIED ACT OF TERRORISM** .

   Multiple incidents of an **OTHER ACT OF TERRORISM** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a **CERTIFIED ACT OF TERRORISM** or an **OTHER ACT OF TERRORISM** that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this policy.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

© Berkley Oil & Gas Specialty Services, LLC, 2010

GEM000045